**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:05-cr-336 |
| | ) | |
| MAURICE PLUMMER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Defendant, Maurice Plummer ("Defendant"), is charged by Indictment with two firearms-related offenses.  Before the Court for consideration and disposition are the MOTION TO SUPPRESS STATEMENTS AND PHYSICAL EVIDENCE (*Document No. 39*), as well as the MOTION TO SUPPRESS EVIDENCE (13 CASSETTE TAPES) (*Document No. 44*) filed by Defendant.  The GOVERNMENT'S BRIEF AND RESPONSES TO PRE-TRIAL MOTIONS OF DEFENDANT (*Document No. 49*) has been filed in opposition thereto, and Defendant later filed his MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE (*Document No. 53*).

On June 13, 2006 and June 14, 2006, the Court conducted an evidentiary hearing on the two motions to suppress.  The only issues raised at the hearing were whether Defendant invoked his right to counsel during post-arrest questioning, and whether cassette tapes of his telephone conversations while incarcerated at the Allegheny County Jail were acquired unconstitutionally.

At the hearing all parties were represented by counsel who presented and argued the issues skillfully and effectively.  Brian Fattori, Joseph Bielevicz and Donna Mason testified on behalf of the government.  No other witnesses testified.  At the conclusion of the hearing, the Court took the matter under advisement and allowed the parties additional time to file briefs on the matter, which Defendant has done.

A transcript of the testimony adduced at the suppression hearing has not been transcribed to date; however, the Court is prepared to issue its Findings of Fact and Conclusions of Law based upon its notes, recollection, and hearing exhibits.

The Court will discuss primarily those basic facts which are relevant to the motion, and the following facts are basically unrebutted.   Based on the testimony and evidence presented at the suppression hearing and the applicable law, the Court enters the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Criminal Procedure 12(d):

## FINDINGS OF FACT

1.        On November 2, 2005, a federal grand jury returned a two-count Indictment which charged Defendant with Conspiracy to Acquire Firearms Through the Use of False Statements, in violation of Title 18, United States Code, section 371 (Count I), and Possession of a Firearm by a Convicted Felon, in violation of Title 18, United States Code, sections 922(g)(1) and 924(e) (Count II).  The essence of Count I is that Defendant, who is prohibited from possessing firearms, had another person purchase a .45 caliber Cobra pistol for him at a local firearms dealer.  Count II charges Defendant with unlawful possession of the .45 caliber Cobra pistol.

2.        On November 18, 2005, at approximately 8:40 p.m., Defendant was arrested by Pittsburgh Police Officer Brian Roberts pursuant to a federal arrest warrant issued in connection with this case.  At the time of his arrest, Defendant was driving a rented Dodge Stratus. Defendant was then taken to the Pittsburgh Police Headquarters on Pittsburgh's North Side to be interviewed.  He was taken to an interview room, his handcuffs were removed, and he was shackled to a metal ring attached to the floor.

3.        Special Agent Brian Fattori ("Agent Fattori") of the federal Bureau of Alcohol, Tobacco and Firearms and Detective Joseph Bielevicz ("Detective Bielevicz") of the City of Pittsburgh Police met at Pittsburgh Police Headquarters and conducted the interview.[1]  Agent Fattori was notified that Defendant had been arrested while attempting to serve an arrest warrant for Defendant at the apartment of Brandi Smith, Defendant's girlfriend.

---

[1].  Agent Fattori has been a Special Agent for over six (6) years, and Detective Bielevicz has been employed by the Pittsburgh Police for approximately thirteen (13) years.  Neither Agent Fattori nor Detective Bielevicz was involved in the arrest of Defendant.

4.      Prior to questioning, Detective Bielevicz read Defendant his *Miranda* rights from a standard form.  Defendant agreed to waive his *Miranda* rights and talk, but he declined to sign a written acknowledgment that he had been informed of and waived his *Miranda* rights. Specifically, Defendant stated, "I'll talk to you, but I'm not signing anything," or words to that effect.  Defendant stated that he did not want to sign the written acknowledgment and waiver because he "didn't want his name on paper" and "knew people who got screwed up signing forms," or words to that effect.[2]

5.      Detective Bielevicz's notes contain the following notation: "Miranda - understood rights."  There is no evidence that Defendant did not understand his *Miranda* rights. Additionally, prior to questioning Defendant was informed by Agent Fattori that he was under indictment for the instant offenses.

6.      During the interview Defendant was friendly and cooperative toward Detective Bielevicz and Agent Fattori.  He was informed that he was allowed to make two (2) telephone calls at any time he wanted.  The interview lasted less than two (2) hours and during the entire period Defendant did not invoke his right to remain silent, did not ask that he be provided with a lawyer, or ask to make a telephone call.  Defendant apparently made incriminating statements during the interview, although there was no testimony about the substance of those statements at the hearing.

7.      At the end of the interview Defendant made a telephone call.  After the telephone call Defendant was transported to the Allegheny County Jail.

8.      Donna Mason, the Internal Affairs Coordinator at the Allegheny County Jail, testified about the operation of the inmate telephone system at the jail.  She maintains the internal audiotaping system and serves as a liaison to outside agencies which may seek tapes of inmates' outgoing calls.  Her uncontradicted testimony establishes the following facts.

9.      The Allegheny County Jail provides telephones for the use of inmates.  The

---

[2]. Agent Fattori testified that it is very common for a defendant to not want to sign a written waiver acknowledging *Miranda* warnings and waiving those rights.

telephones are located in common areas of the jail.  All outgoing calls are recorded unless an inmate affirmatively demonstrates that the subject matter of the call will be confidential, *e.g.*, a conversation with an attorney.  Recordings of the calls are maintained on a computer hard drive for a year, at which point they are taped over.

10.     Besides confidential calls, the only exception to the recording of outgoing calls is for inmates who are in the "intake" section of the jail.  Defendant was not in the "intake" section of the jail when his calls were recorded.

11.     Inmates are provided with considerable notice that their outgoing calls will be recorded.  Signs are conspicuously posted at each telephone which state that all telephone calls will be recorded.  The inmate handbook, which each inmate receives upon arrival, also advises that all calls are recorded.  Additionally, a message advising that the call will be recorded is heard prior to each outgoing call.  An inmate must hear the message in order to use the telephone.

12.     The telephone system allows the jail's staff to listen to inmates' telephone calls contemporaneously.  However, this capability is utilized only if there is a reason to do so, which does not occur very often.  Jail security is the purpose of recording inmates' telephone calls, and the system is not to gather evidence for criminal prosecutions.  When calls are reviewed after the fact, the purpose is often to disprove claims of assault by inmates, to figure out who may have been involved in a fight and/or for other purposes related to jail security.

13.     A grand jury subpoena, a search warrant or other legal process must be served upon the jail in order to obtain tapes of inmates' telephone calls.  The request for recordings must specify the telephone number that the inmate called.

14.     While in jail Defendant made telephone calls to Dale Smith on the inmate telephone system.  Dale Smith allegedly purchased the .45 caliber Cobra pistol on Defendant's behalf and was cooperating with the government while Defendant was in jail.  The government provided Dale Smith's phone numbers to the grand jury, and a grand jury subpoena was served upon Donna Mason.  The grand jury subpoena requested the tapes of all telephone calls made by Defendant from the Allegheny County Jail to Dale Smith's two telephone numbers.  The Bureau

4

of Alcohol, Tobacco and Firearms took all the tapes which pertained to the two telephone numbers. The tapes allegedly contain incriminating discussions between Defendant and Dale Smith.

## CONCLUSIONS OF LAW

1.      In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."

2.      The *Miranda* court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* "Ordinarily, in determining whether an individual is in custody, the ultimate inquiry is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Reinert v. Larkins*, 379 F.3d 76, 86 (3d Cir. 2004) (quotations and citations omitted). It is undisputed that Defendant was subjected to custodial interrogation during the interview with Detective Bielevicz and Agent Fattori.

3.      If a person in custody "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda*, 384 U.S. at 444-45. "Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him." *Id*. at 445. "The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." *Id*.

4.      The defendant may waive *Miranda* rights, provided that the waiver is made voluntarily, knowingly and intelligently. *Miranda*, 384 U.S. at 444. In *Moran v. Burbine*, 475 U.S. 412 (1986), the Supreme Court set forth a two-pronged test for waiver of *Miranda* rights:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the

> interrogation reveal both an uncoerced choice and the requisite level of
> comprehension may a court properly conclude that the *Miranda* rights have been
> waived.

*Moran*, 475 U.S. at 421 (internal quotations marks and citations omitted).  The United States

Court of Appeals for the Third Circuit has also stated that a court must examine "the events that

occurred and the background, experience, and conduct of the defendant."  *United States v.*

*Sriyuth*, 98 F.3d 739, 749 (3d Cir.), *cert. denied*, 519 U.S. 1141 (1997) (citations omitted).

      5.     The government bears the burden of proving a waiver of *Miranda* rights by a

preponderance of the evidence.  *Colorado v. Connelly*, 479 U.S. 157, 169 (1986); *United States*

*v. Tyler*, 164 F.3d 150, 156 (3d Cir.), *cert. denied*, 526 U.S. 1077 (1999).

      6.     Defendant contends that during the interview at the Pittsburgh Bureau of Police

headquarters, he "allegedly was advised of his *Miranda* warnings, but refused to sign a written

statement recognizing that he was advised of his rights or waiving said rights," which allegedly

amounts to a violation of his Fifth Amendment rights.  Motion to Suppress Statements at ¶ 8.

The Court finds, based upon the totality of the circumstances, that Defendant voluntarily,

knowingly and intelligently waived his right to remain silent.  The facts recited at the hearing

clearly reflect that Defendant was properly informed of and understood his right to remain silent,

and that he waived that right and continued to speak with and answer the questions of Detective

Bielevicz and Agent Fattori.  Moreover, Defendant's refusal to sign a written acknowledgment of

waiver does not invalidate his implied waiver of *Miranda* rights.  *United States v. Velasquez*, 626

F.2d 314, 320 (3d Cir. 1980) (holding that defendant's "subsequent willingness to answer

questions after acknowledging that she understood her *Miranda* rights is sufficient to constitute

an implied waiver" of Fifth Amendment rights under *North Carolina v. Butler*, 441 U.S. 369

(1979)).

      7.     Defendant also contends that he orally requested an attorney during the interview,

but was not provided with an attorney.  Motion to Suppress Statements at ¶ 8.  Detective

Bielevicz and Agent Fattori testified consistently and credibly that Defendant never asked to

speak with an attorney before or after having been advised of his *Miranda* rights, and there is no

evidence to the contrary.  Thus, the Court finds that Defendant voluntarily, knowingly and

intelligently waived his Fifth Amendment right to consult with an attorney.  Therefore, the Court

finds that the government has demonstrated that no constitutional violations occurred during

Defendant's interview with Detective Bielevicz and Agent Fattori.  The Motion to Suppress

Statements and Physical Evidence will be denied.

8.     The Fourth Amendment of  the United States Constitution protects individuals

from "unreasonable searches and seizures."  *U.S. Const. amend. IV.*  "Since *Katz v. United

States*, 389 U.S. 347 (1967), the touchstone of [Fourth] Amendment analysis has been the

question whether a person has a constitutionally protected reasonable expectation of privacy.

The [Fourth] Amendment does not protect the merely subjective expectation of privacy, but only

those expectations that society is prepared to recognize as reasonable."  *Oliver v. United States*,

466 U.S. 170, 177 (1984) (citations, quotation marks and brackets omitted).

9.     The United States Court of Appeals for the Third Circuit has recently provided the

following guidance:

> The fundamental task of any Fourth Amendment analysis is assessing the
> reasonableness of the government search.  If the search is reasonable, there is no
> constitutional problem, for the Fourth Amendment only protects individuals from
> unreasonable searches and seizures.  Determining whether a search is reasonable
> depends on all of the circumstances surrounding the search or seizure and the
> nature of the search or seizure itself, and involves balancing on the one hand, the
> degree to which [the search] intrudes upon an individual's privacy and, on the
> other hand, the degree to which [the search] is needed for the promotion of
> legitimate governmental interests.

*United States v. Sczubelek*, 402 F.3d 175, 182 (3d Cir. 2005) (citations and quotation marks

omitted).

10.     On a motion to suppress, the government bears the burden of showing that each

individual act constituting a search or seizure under the Fourth Amendment was reasonable.

*United States v. Ritter,* 416 F.3d 256, 261 (3d Cir. 2005).

11.     In his Motion to Suppress Evidence (13 Cassette Tapes), Defendant contends that

the government must have obtained a search warrant prior to seizing his recorded conversations

while in jail, and the government's failure to do so requires that the tapes be suppressed.  Motion

at unnumbered 3; *see also* Memorandum in Support at 3 ("The government's review of the tapes

recorded while he was an inmate at the ACJ amounts to 'mining' for information without a

showing of probable cause.").[3]

12.     The government, on the other hand, contends that no search warrant was necessary because Defendant had no reasonable expectation of privacy in the calls, and because society is not prepared to recognize any such expectation of privacy as reasonable. Government's Response at 4.  Therefore, according to the government, there was no violation of Defendant's Fourth Amendment rights under these circumstances.  *Id.*

13.     The Supreme Court has recognized the diminished rights of those in and visiting prisons.  *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984). ("The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions").  Additionally, "it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room.  In prison, official surveillance has traditionally been the order of the day."  *Lanza v. State of N.Y.*, 370 U.S. 139, 143 (1962).

14.     Where a facility provides some formal to inmates that calls may be monitored, the facility's "practice of automatically taping and randomly monitoring telephone calls of inmates in the interest of institutional security is not an unreasonable invasion of the privacy rights of pre-trial detainees" or of "non-inmates" who receive calls from pre-trial detainees.  *United States v. Willoughby,* 860 F.2d 15, 21-22 (2d Cir. 1988).  *See also United States v. Amen*, 831 F.2d 373, 379-80 (2d Cir. 1987) ("If security concerns can justify strip and body-cavity searches, ... and wholly random cell searches, ... then surely it is reasonable to monitor prisoners' telephone conversations, particularly where they are told that the conversations are being monitored.") (citations omitted).

15.     The Court is in agreement with the authorities cited above.  The Court finds that Defendant had no reasonable expectation of privacy in his telephone calls from the Allegheny County Jail, and in any event society is not prepared to recognize any such expectation of privacy

---

[3].  There is no argument that Defendant's conversations with Dale Smith were in violation of his Sixth Amendment right to counsel.  *See Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir. 1999).

as reasonable.  Therefore, there was no violation of the Fourth Amendment, and the motion to suppress the cassette tapes will be denied.[4]

16.     The Motion to Suppress Statements and Physical Evidence references a Daewoo 9mm pistol that was seized from a car driven by Defendant when he was arrested pursuant to the arrest warrant issued in this case.  Motion to Suppress Statements at ¶¶ 6, 9.  Additionally, at the hearing there was a brief reference to drugs that were seized during the search of Defendant's girlfriend's apartment.  However, no crimes have been charged in connection with these items and the parties were in agreement that any issues regarding the seizure of these items were not yet ripe for adjudication.

17.     For the foregoing reasons, both of Defendant's motions to suppress will be denied.  An appropriate Order follows.

McVerry, J.

_____

[4]. The Court notes that "[t]he grand jury may generally compel the production of evidence or testimony of witnesses ... unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials."  *In re Grand Jury Subpoena*, 223 F.3d 213, 216 (3d Cir. 2000) (citation and quotation marks omitted).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:05-cr-336 |
| | ) | |
| MAURICE PLUMMER, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER OF COURT**

AND NOW, this 2nd day of August, 2006, in accordance with the foregoing

Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that

1)    The Motion to Suppress Statements and Physical Evidence (*Document No. 39*) is

**DENIED** as to Defendant's statements made to Detective Bielevicz and Agent

Fattori during his interview, but otherwise **DENIED** as not yet ripe for

adjudication; and

2)    The Motion to Suppress Evidence (13 Cassette Tapes) (*Document No. 44*) is

**DENIED**.


BY THE COURT:


s/  Terrence F. McVerry
United States District Court Judge


cc:   Margaret E. Picking, AUSA
      Email: margaret.picking@usdoj.gov

      Jay K. Reisinger
      Email: JREISINGER@REICHALEXANDER.COM