IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | 2:05-cr-336 |
| MAURICE PLUMMER, ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

Now pending before the Court are numerous motions filed by Defendant:

MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS OBTAINED FROM VEHICLE STOP (*Document No. 86*);

MOTION TO SUPPRESS PHYSICAL EVIDENCE OBTAINED FROM SEARCH OF RESIDENCE (*Document No. 88*);

MOTION TO COMPEL DISCLOSURE OF PLEA BARGAINS, PREFERENTIAL TREATMENT, AND PROMISES TO GOVERNMENT WITNESSES (Document No. 100);

MOTION REQUESTING NOTICE PURSUANT TO RULE 404(B) (Document No. 101);

MOTION FOR DISCLOSURE OF JENCKS ACT MATERIAL (Document No. 102);

MOTION FOR SEVERANCE OF COUNTS (Document No. 103);

MOTION TO SUPPRESS EVIDENCE SEIZED IN SEARCH OF CAR AND STATEMENTS MADE THEREAFTER (Document No. 104);

MOTION TO SUPPRESS EVIDENCE REGARDING HOUSE SEARCH (Document No. 105);

FIRST MOTION FOR SEVERANCE OF COUNTS (Document No. 106); and

MOTION TO SUPPRESS STATEMENTS MADE IN VIOLATION OF SIXTH AMENDMENT RIGHTS (Document No. 112).

The government filed an omnibus response (*Document No. 117*). The Court held a suppression hearing on July 3, 2007, and provided Defendant with an opportunity to provide an additional witness on August 2, 2007. Defendant's counsel chose to present oral argument instead.[1] At Defendant's request on August 2, 2007, the Court permitted further briefing by both

---

[1]During the pendency of this case, Defendant has previously been represented by attorneys G. William Bills, Jr., Jay K. Reisinger and William C. Kaczynski. Paul D. Boas is now

sides (Document Nos. 125, 126).  Needless to say, the matters are ripe for disposition. The motions fall into three broad categories, which will be addressed seriatim: (1) evidentiary motions; (2) motions to suppress evidence; and (3) motions to sever counts.

Plummer is charged in a four-count superseding indictment with: (1) conspiracy to acquire firearms through the use of false statements on or about August 21-24, 2004; (2) possession of a firearm by a convicted felon on August 24, 2004; (3) conspiracy to distribute and possess with intent to distribute crack cocaine on or about November 18, 2005; and (4) possession of a firearm by a convicted felon on November 18, 2005.

The initial indictment covered counts 1 and 2.  Agents attempted to execute an arrest warrant in November 2005, but were uncertain as to Plummer's whereabouts.  On November 18, 2005, they surveilled and visited the apartment of Plummer's girlfriend, now wife, Brandi Smith, at 7142 Kedron Street in the Homewood section of Pittsburgh.  There was a subsequent search of the apartment, which disclosed the presence of crack cocaine and other drug paraphernalia.  Later that evening, Plummer was arrested in a silver Dodge Stratus, from which agents recovered a Daewoo pistol.  These events led to the additional charges set forth at counts 3 and 4 of the superseding indictment.

    A.    Evidentiary Motions

Several pending motions are evidentiary in nature.  Defendant seeks disclosure of plea bargains and related treatment of potential witnesses (Doc. # 100), Rule 404(b) evidence (Doc. # 101), and Jencks Act materials (Doc. # 102).  The government seeks permission to produce impeachment-type Brady material at the same time its Jencks Act material is provided.  The government acknowledges its obligation to provide Jencks materials and proposes to produce them on the Friday preceding an anticipated Monday trial date.  In accordance with the government's representations, the motions at Document Nos. 100 and 102 are **GRANTED**, and the government shall provide the relevant materials at least three days prior to the

---

defendant's counsel of record.

commencement of trial.

The government's response to the motion regarding Rule 404(b) evidence is intertwined with its response to the severance motions. If the cases are severed, the government asserts that it will seek to introduce evidence concerning Plummer's history of straw purchases of firearms, particularly as to the scheme described in Count 1 of the superseding indictment. The government further states that it is unaware of any additional Rule 404(b) evidence that it intends to introduce at trial, but that it will promptly notify the Court and defense counsel if that position changes. In light of the government's response, the motion at Document No. 101 is **GRANTED**, and such evidence shall be provided to Defendant at least three days prior to the commencement of trial.

### B. Motions to Suppress Evidence

There are numerous pending motions to suppress evidence, some of which, due to the changes in defense counsel, are directed at the same incidents. For example, the motions at Document Nos. 86 and 104 are duplicative, as each seeks to suppress evidence seized during the search of the car incident to arrest on November 18, 2005. The motions at Document Nos. 88 and 105 each concern the search of the apartment at 7142 Kedron Street. However, because the legal theories are somewhat divergent, during the hearing on July 3, 2007, defense counsel Paul Boas withdrew the motion at Document No. 88. The Court will address the motions in chronological order.

#### 1. Phone Calls from Prison

Defendant seeks to suppress recorded phone calls he made to his former girlfriend while he was an inmate at the Allegheny County Jail. Defendant argues that his girlfriend was cooperating with the government, and therefore, the statements were obtained in violation of his Sixth Amendment right to counsel. The evidence presented at the suppression hearing wholly failed to support this theory. As an initial matter, Plummer was in jail on an unrelated bench warrant and there were no federal charges at the time. The Sixth Amendment right to counsel

attaches at the time of arraignment. *Massiah v. United States*, 377 U.S. 201, 205 (1964). Moreover, the woman at issue was never a cooperating witness of any kind. Officer Bielevicz interviewed her, but did not believe her. Bielevicz never instructed her to obtain or elicit information and never directed her to make phone calls to Plummer. Instead, in the belief that the woman would continue to have phone calls with Plummer, and speculating about their content, Bielevicz obtained a subpoena from the grand jury to review tapes from the jail. Accordingly, the MOTION TO SUPPRESS STATEMENTS MADE IN VIOLATION OF SIXTH AMENDMENT RIGHTS (Document No. 112), is **DENIED.**

2.   Search of the Apartment of Brandi Smith

Defendant contends that all evidence found in the apartment at 7142 Kedron Street should be suppressed because the search was non-consensual. Defense counsel argues that Defendant falls into a "niche" in that he has standing to raise this argument due to his regular visits with his then-girlfriend, but he did not actually reside in the apartment. The Court will assume that Plummer has standing, but finds that the search was consensual.

Agent Bielevicz testified, credibly, that the agents' only objective on November 18, 2005 was to execute an arrest warrant for Plummer. While conducting surveillance from a street at the rear of the house, he and agent Haggerty observed three males in the kitchen area of the apartment, one of whom appeared to be Plummer. They called for backup and then proceeded to drive around the block to the front of the house. During this maneuver, they saw a silver car pull away from the curb. The agents speculated that the car might have contained one or more of the three men they had observed earlier, but reasoned that it was more likely that the men were still inside the apartment. After backup arrived and deployed, agents Bielevicz, Haggerty and Green approached the front door of the house. Haggerty had on his ATF vest and both agents had their badges on. Several uniformed officers were also on the porch and steps, in addition to two officers behind the house. The agents identified themselves as police and asked to enter. Ms. Smith invited them into the foyer. The officers told her that they had a warrant for Plummer. She told them that Plummer was not there. The agents asked: "Can we look anyway?" Ms.

Smith stepped aside, gestured with her arm and head in the direction of the stairs and said "Go ahead," or words to that effect. She sounded "resigned." Her tone was further described as disgusted and it was clear that Ms. Smith was not happy to have police in her house. Smith further informed officers that the apartment on the first floor of the house was unoccupied and that her two children were upstairs.

It is correct, as Defendant points out, that the government has the burden to prove that consent was given, and that "mere submission to a claim of lawful authority" does not constitute consent. *Florida v. Royer*, 460 U.S. 491, 497 (1983). Whether consent is "voluntary" is determined by the totality of the circumstances. *United States v. Mendenhall*, 446 U.S. 544, 557 (1980). However, consent "may be express or implied, and need not be knowing or intelligent." *United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005) (citation omitted). Consent "may be given unintentionally and without knowledge of the right to refuse consent, and the police are not required to warn an individual of the right to refuse consent." *Id.*

Defendant points to the following facts: it was dark; only Smith and her baby children were home; there were a large number of armed police officers present; she was not given a chance to read the warrant or told that it was an *arrest* warrant, as opposed to a *search* warrant; Smith was not told that she did not have to let officers in; the officers did not believe Smith's statement that Plummer was not there; and her tone of voice was "disgusted" or "resigned."

These factors, in light of the totality of the circumstances of this case, did not render Ms. Smith's consent invalid. The agents presented their request to search the home in the form of a question, rather than as a command. Ms. Smith gave an unambiguous verbal assent: "Go ahead," while stepping aside and gesturing toward the steps. In this context, words matter and officers are entitled to rely on them. In addition, Ms. Smith confirmed her words by the conduct of stepping aside and waving her arm toward the stairs. A rule of law that would prohibit officers from relying upon such a clear, unequivocal consent would vitiate the fundamental concept of

obtaining consent.[2]  Accordingly, the MOTION TO SUPPRESS EVIDENCE REGARDING HOUSE SEARCH (Document No. 105) is **DENIED**.

        3.      Search of the Car

Defendant contends that the search of the car was improper because agents did not have probable cause to believe that he was in the vehicle.  Defendant further contends that statements made thereafter by Plummer were "fruit from the poisonous tree" and should also be suppressed.  The Court does not agree.

The testimony presented by the agents during the hearing, which the Court finds to be credible, demonstrated that during the surveillance three black males were visible inside the Kedron Street address.  One of these persons resembled Plummer.  As the agents drove around the block, they saw a silver car pull away from the curb but could not see or identify the occupants.  Later, after confirming that the men were no longer in the apartment, agents asked Brandi Smith where the men were, and she informed them that they had driven away in a silver car which had been rented from Enterprise.  The agents called the rental agency, obtained the license plate number for a silver Dodge Stratus, and then broadcast a "BOLO" (Be On LookOut) on all three police radio channels at approximately 7:30 p.m.  Officer Roberts was on patrol in the Hill District section of Pittsburgh and observed a vehicle of similar description.  He called to confirm whether the license plate matched.  Only after receiving such confirmation did he obtain backup and pull the car over.  Officers performed a high-risk vehicle stop because they saw the driver (Plummer) make furtive movements and because the BOLO warned that the occupants may be armed and dangerous.  The officers also confirmed that Plummer had a distinctive marijuana tattoo on his neck, as broadcast in the BOLO.  After all passengers had been removed from the car, Officer Symonovic observed a gun on the armrest between the two front seats, in

---

[2]Defendant also infers from Ms. Smith's subsequent refusal to consent to a search of the apartment for drugs that she intended to refuse consent to the search for Plummer.  The Court draws the opposite inference, however, in that it was clear that Ms. Smith knew how to refuse consent and was not too intimidated to invoke that right.

plain view and within easy reach of Plummer.

The applicable standard is whether the officers had a reasonable, particularized suspicion to stop the vehicle. *United States v. Cortez*, 449 U.S. 411, 417 (1981). In this case, the totality of the circumstances provided more than probable cause for officers to stop the car. Agents had observed a man matching Plummer's description in Brandi Smith's home, had searched that home and confirmed that he was no longer inside, and then been informed by Brandi Smith that Plummer had driven away with two men in a silver car rented from Enterprise. Agents had then obtained the license plate number from the rental car company. Officer Roberts confirmed that the description of the vehicle and the license plate matched prior to pulling the car over. In sum, the stop and the subsequent recovery of the firearm were fully justified. Defendant's argument that his subsequent statements to agents were "fruits of the poisonous tree" must also fail.[3] Accordingly, the MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS OBTAINED FROM VEHICLE STOP (*Document No. 86*) and MOTION TO SUPPRESS EVIDENCE SEIZED IN SEARCH OF CAR AND STATEMENTS MADE THEREAFTER (Document No. 104) are **DENIED**.

C.   Motions for Severance

Defendant's motions for severance are much more substantial. Indeed, the government proposes a compromise acknowledging that some severance may be appropriate. Defendant proposes three trials: (1) Counts 1 and 2; (2) Count 3; and (3) Count 4. The government proposes two bifurcated trials: (1) Counts 1 and 2; and (2) Counts 3 and 4, with the "felon in possession of a firearm" charge being tried first in each case. The government requests that the trial on Counts 3 and 4 be held first, since it involves more serious charges.

The relevant considerations in determining severance are set forth in Federal Rules of Criminal Procedure 8 and 14. Rule 8 authorizes joinder of charges if they are of similar

---

[3]Prior counsel had filed a motion to suppress these statements. At the earlier suppression hearing, officers testified that Plummer was given a Miranda warning, and although he refused to sign a document, he knowingly and voluntarily made a number of statements.

character, are based on the same act or transaction, or are part of a common scheme. Rule 14 permits the Court to order separate trials of counts, sever the defendant's trials, or provide any other relief that justice requires, if joinder of offenses appears to prejudice either the defendant or the government. The Court may also, in exercising its discretion, consider the conservation of judicial resources. *United States v. Joshua*, 976 F.2d 844 (3d Cir. 1992) (rev'd on other grounds, *Stinson v. United States*, 508 U.S. 36, 40 (1993)).

In the superseding indictment, the charges at counts 1 and 2 occurred some fifteen months prior to the conduct charged at counts 3 and 4. Counts 1 and 2 are of a similar character and involved a common scheme, namely to evade the prohibition that Plummer, as a convicted felon, could not possess a firearm. Count 1 alleges a conspiracy to make a straw purchase of a firearm and Count 2 alleges that Plummer then illegally possessed that firearm. Thus, the Court concludes that there is no prejudice if Counts 1 and 2 are tried together without bifurcation.

Counts 3 and 4 involved conduct that occurred in temporal proximity. However, there is no other connection between the charges. The government points to the fact that after searching Ms. Smith's home and finding the drugs and paraphernalia that led to the charges in count 3, she told agents that Plummer was in the car, from which agents recovered the firearm at issue in count 4. However, this is mere happenstance. There is no basis to infer that the conduct was part of a common scheme, in contrast to a situation in which the firearm and drugs were found in close physical proximity (i.e., the "tools of the trade" rationale). Here, the drugs were located in Homewood and the gun was recovered in the Hill District. The elements of the crimes are entirely distinct. Presenting the same jury with evidence of both a drug offense and a "felon in possession of a firearm" offense could be prejudicial, even if the trial was bifurcated. If the firearm offense is tried first, the jury will learn that Plummer is a convicted felon, which may affect their consideration of the drug offense. On the other hand, if the drug offense is tried first, that information may provide an inference for Plummer's alleged possession of the firearm.

In *United States v. Chavis*, 296 F.3d 450, 456-61 (6th Cir. 2002), the Court of Appeals held that joinder was improper in a similar fact situation. The face of the indictment, as here, did not allege any connection between the drug and firearm counts. Moreover, the Court concluded

that the offenses were not of the same or similar character.  The Court in *Chavis* further reasoned that because the elements of the offenses are entirely distinct, there would be little gain in efficiency from trying them together.  This Court finds the analysis in *Chavis* to be persuasive.  In sum, the MOTION FOR SEVERANCE OF COUNTS (Document No. 103) and the FIRST MOTION FOR SEVERANCE OF COUNTS (Document No. 106) are **GRANTED**.  Three separate trials will be held.  At the government's request, a trial on Count 3 will be conducted first.  Immediately upon its conclusion, the Court will empanel a new jury and conduct a trial on Counts 1 and 2.  Immediately upon the conclusion of this second trial, the Court will empanel a third jury and conduct a trial on Count 4.

To recap, the motions at Document Nos. 100, 101, 102, 103 and 106 are **GRANTED** and the motions at Document Nos. 86, 88, 104, 105 and 112 are **DENIED**.

SO ORDERED this 10th day of October, 2007.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   Margaret E. Picking, AUSA
      Email: margaret.picking@usdoj.gov

      Paul D. Boas
      Email: paulboas@choiceonemail.com